MUNROE *et al. vs.* PHILLIPS, administratrix.

Where in the year 1854, solvent notes were deposited with the defendant's intestate for the use of certain colored minors, by their reputed father, and the intestate shortly thereafter took out letters of guardianship for the minors as free persons of color, and managed the fund from then until early in 1864, when he invested what remained in Confederate bonds without an order of court, and on April 23d, 1878, three of said wards brought suit for their share of the fund, the eldest of whom became of age in 1863, married in 1865, and became discovert in 1868 by the death of her husband, the second and third reaching their majority in 1871 and 1872 respectively :

*Held,* that the cause of action accrued to plaintiffs before June, 1865, and more than nine months and sixteen days having elapsed after their respective disabilities were removed before suit, the action is barred by the provisions of the act of 1869.

Statute of limitations.  Before Judge WIMBERLY.  Muscogee Superior Court.   May Adjourned Term, 1880.

On April 23, 1878, Victoria Munroe, formerly Victoria Lowe, Marian Grey, formerly Marian Lowe, Missouri Overton, formerly Missouri Lowe, brought complaint against Laura Phillips, as administratrix upon the estate of Pleasant J. Phillips, deceased, for $10,000.00.  The declaration alleged that on January 1st, 1854, defendant's intestate, being the guardian of petitioners, received as such guardian from Henry Lowe, as the reputed father of petitioners, $4,268.76 for their use, and the said intestate undertook and promised to pay them the aforesaid money when he should be thereunto afterwards requested, yet the said intestate whilst in life, and the said Laura Phillips as his administratrix, since his death, although often requested, to-wit : on January 1st, 1875, hath not paid the same or any part thereof, but the same to pay hath hitherto refused, and still does refuse, to the damage of petitioners $10,000.00.  Wherefore they bring suit and pray process, etc.

The case was tried on the declaration as above stated without amendment. The remaining facts, so far as material, are stated in the opinion.

BLANDFORD & GARRARD; THORNTON & GRIMES, for plaintiffs in error.

PEABODY & BRANNON; J. M. RUSSELL, for defendant.

HAWKINS, Justice.

This was an action brought in the year 1878, by Victoria Munroe and her two sisters, Missouri and Marian Lowe against the defendant, as administratrix of P. J. Phillips, to recover a sum of money which they alleged the said P. J. Phillips, her intestate, received from Henry H. Lowe for their use.

The declaration was in complaint, and in substance charged that Henry H. Lowe, their reputed father, in 1854, left and placed in the hands of said P. J. Phillips, the amount of $14,000.00 in good, solvent notes on other persons, to be held for them and their brother Polk, and a deceased sister, to be paid over to them on demand, which the said defendant refused to do. Polk was to have $10,000.00 and the others one thousand dollars each. They sue for their part, one thousand each. To this action the defendant pleads the general issue, settlement with a guardian appointed on the resignation of her intestate husband, and the statue of limitations, and that plaintiffs were not entitled to recover. Trial was had resulting in a verdict for defendant. A writ of error was sued out and the case was here by this court reversed upon several grounds. It appeared that in the year 1854, Henry H. Lowe placed in the hands of Phillips good and solvent assets to the amount of $14,000.00. That he was the father of the plaintiffs, they were negroes. The negroes were to be taken to Washington city and there emancipated, and this sum was to be paid to them, $10,000,00

to the boy, and one thousand dollars to each of the others. Phillips accepted the trust, and afterwards, in 1854, obtained letters of guardianship of the plaintiffs as free persons of color, and used the assets in the support and maintenance of the wards until and during the war, when he invested what remained in Confederate bonds without an order of the judge of the superior court.

Victoria married in 1865 and became discovert by the death of her husband in 1868. Missouri and Marian after 1868, and while they were minors, went to Louisiana and there were married. Missouri became of age in 1871, and Marian in 1872, and Victoria arrived at majority in 1863.

The evidence showed that Phillips as guardian of the plaintiffs, free persons of color, received the property, being good solvent notes, in 1854, and that he used the same for the benefit of the wards, showing a tabulated statement of the receipts and disbursements from his appointment in 1854, including all the years from that time until January, 1864.

The evidence shows that he lent out the moneys to solvent parties, and in the year 1863 or 1864, received payment of the same in Confederate money, and then funded the same in Confederate bonds, and on the first day of May, 1864 held, as the only property or effects of his wards, Confederate bonds to the amount of $3,919.54. This was the whole of said estate, and the disposition thereof as made by the said Phillips, and the times of the making said transactions.

In 1868 Munroe, who was the husband of Victoria, obtained letters of guardianship, and before the ordinary Phillips settled with Munroe, turning over all the assets in his hands, to-wit: the Confederate bonds, obtaining a receipt in full and a final discharge from the ordinary, and resigned his guardianship.

When this case was here before, see 62 *Ga.*, this court held, BLECKLEY, J., delivering the opinion, that the dis-

charge of Phillips before the ordinary was void, because no citation and notice was given to the next of kin.   That as to free persons of color there could be no resignation, but that free persons of color were *non sui juris* until July, 1868, when by the constitutional amendments they were invested with all rights of citizenship, including the right to sue, etc.   But that by operation of law, Phillips was converted into a general trustee, and was no longer the guardian of free persons of color in that legal sense alone ;  that the funding of the Confederate money being without an order of the judge of the superior court, did not protect him against a recovery for the value of the money, but under the allegations in the declaration, did not decide the question of the statute of limitations of 1869.

The case was again tried, and upon similar proof a like verdict was rendered for the defendant, and this second bill of exceptions is now here for reviewing the finding below.

This court also held that the declaration was defective, and should be amended, setting out all the facts, so as to show when the right of action accrued, and all the actions of Phillips concerning the money and property of the plaintiffs.

There was no motion for a new trial in this case, and no amendment of the declaration.

The only question, therefore, for discussion now is, whether the plaintiffs are affected, and how, by the act of 1869, affecting contracts and causes, accruing prior to June, 1865?   It was insisted here that this cause of action did not exist until 1868, and therefore the limitations of the Code, and not of the act of 1869, were applicable to this case, and this depends upon the simple question, when did the cause of action arise?   If not till 1868, if then, these plaintiffs were not barred, for they had ten years from the removal of disabilities to bring their proper suit, but if the cause of action arose prior to

and before the first day of June, 1865, then the complainants are barred, according to the provisions of the act of 1869.

The evidence shows that Phillips, the intestate guardian, received, used and disposed of the entire estate prior to the first day of June, 1865 ; that he used the money and assets in the maintenance and support of the wards—collecting and loaning out the same until the year 1863, when he collected the notes then held by him as guardian, and funded the whole in two Confederate bonds or certificates therefor, and this closed his entire dealings with the wards' estate. Nothing more was done by him either in the recognition or continuation of the trust.

In 1868, Victoria's husband obtained letters of guardianship, and receipted to Phillips for the entire assets, and Phillips thereupon resigned. This court held that the proceeding before the ordinary was *void*, and did not affect the relation or liability of Phillips to his wards, and therefore the limitations prescribed by the act of 1869 would operate. The settlement with him and the resignation of his guardianship could not be held a continuation of what did not then exist in law. Therefore, if the cause of action, which was in this case the liability for receiving the Confederate money, its value, and his funding the same in Confederate securities without the sanction of the judge of the superior court, existed prior to June 1st, 1865, they were barred, for it must be conceded that if he received the money in a legitimate way, and when other prudent men were so acting, and it being at the time the only currency of the country, the funding of the wards' money by and under an order of the judge, would protect from a recovery, either of the value of the money or the original securities. So that, on the other hand, his action in funding without an order rendered him liable. The right of action accrued, and all persons who were *sui juris* were, by the provisions of the act of 1869, compelled to bring their

action on or by the first of January, 1870, or the action and the right of action should be forever barred; and the same rule applied to trustees, except where their conduct in the management of the trust funds was fraudulent.

There does not appear to be any fraudulent conduct on the part of the guardian in the administration of these assets, nor was there any motion for new trial made in this case.

The cause of action having accrued prior to the first day of June, 1865, Victoria being of age in 1863, and discovert from 1868 to first January, 1870, she is barred by the said act of 1869.

Missouri attained her majority in 1871, and had nine months and sixteen days from her majority to bring her action, and so as to Marian, who was of age in 1872.

This suit being brought in 1878, all of these plaintiffs are barred.

Whether, therefore, the law of Alabama or of Georgia prevails, whether under the act of 1866, called "the woman's law," the right of action was with the wives, or, according to the common law, the right was in the husbands, all were affected by the act of 1869, and the husbands were barred also.

This disposes of the case, and renders further consideration of the errors of the court unnecessary.

Judgment affirmed.